COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| CECILIA ACOSTA, | § | No. 08-10-00162-CV |
| Appellant, | § | Appeal from the |
| v. | § | 448th Judicial District Court |
| GOVERNMENT EMPLOYEES CREDIT UNION, | § | of El Paso County, Texas |
| | § | (TC# 2008-446) |
| Appellee. | | |

**O P I N I O N**

Cecilia Acosta sued the Government Employees Credit Union ("GECU") for age and national origin discrimination under the Texas Commission on Human Rights Act ("TCHRA"). GECU moved for summary judgment on traditional and no-evidence grounds. The trial court granted the motion without specifying the grounds. In a single point of error, Acosta asserts that the trial court erred in granting summary judgment. We affirm.

**FACTUAL BACKGROUND**

Acosta, a Hispanic female, began working for GECU in 1984. As of September 25, 2006, she was 51 years' old and was serving as an underwriting credit analyst. On that date, Arturo Perez, one of her direct supervisors, notified Acosta that she was being fired for violating GECU's "Confidentiality of Member Business Policy." That policy states, "As approved by laws of the State of Texas governing the operation of credit unions, all matters concerning the business of the members of the credit union shall be kept confidential. Failure to adhere to this

policy will be cause for termination."

Acosta filed an internal appeal of the termination. In connection with the appeal, she submitted a statement regarding the incident that led to her firing. Acosta stated that on September 20, 2006, a person named "Ivan," who was associated with a local car dealership, dropped by the credit union offices. Pam Rivera, another GECU employee, asked Ivan, "Who is this Cesar? We got an app[lication], ah Ceci?" This question was apparently directed to Acosta, who responded, "[W]e got a loan application and he's finance director." Acosta claims that an acting supervisor overheard her answer, but did not hear Rivera's question. When the supervisor called Acosta aside to discuss the matter, she replied that she "was simply responding to Pam's question."[1]

Acosta's internal appeal was denied, as was the charge of discrimination that Acosta filed with the EEOC. Thereafter, she filed this suit against GECU.

Excerpts from Acosta's deposition were attached to GECU's summary judgment motion. Acosta could not recall any particular discriminatory comments, directed at herself or others, that she heard while employed at GECU. She acknowledged that the vast majority of the people in her department were Hispanic and that Perez, the supervisor who fired her, is over fifty years old. Nevertheless, she believed that several people who were involved with her termination had discriminated against her because of her age and national origin. When asked to explain why she held this belief, she indicated that anyone who is younger or not Hispanic might discriminate

_____

[1] Pam Rivera submitted a statement to GECU regarding the incident, but that statement is not included in the record.

against someone who is older and Hispanic.[2] Acosta acknowledged that she violated the confidentiality policy.

GECU also submitted an affidavit from its vice president of human resources. She stated that on November 8, 2006, following the denial of Acosta's internal appeal, Acosta's position was filled by a 47-year-old Hispanic male.

In response to GECU's motion, Acosta provided her own affidavit. She averred that Pam Rivera, a non-Hispanic female, violated the member confidentiality policy during the incident in question, but received no disciplinary action. Acosta further stated that she had spoken to the person hired on November 8, 2006. He told Acosta that GECU was not satisfied with his performance and that he resigned in lieu of termination after only six months on the job.

In addition, Acosta provided affidavits from a former GECU employee and the former employee's ex-husband. They related an incident in which one of GECU's vice-presidents violated the member confidentiality policy by disclosing that a particular member had solicited a loan. The former employee also indicated that this vice-president often violated the member confidentiality policy, that "[m]embers of upper management were made aware of" the violations, and that no disciplinary actions were taken against the vice-president.

## DISCUSSION

---

[2] For example, GECU's attorney asked Acosta about one of her supervisors, "You think just because your age is a little bit older, that's the reason she wanted to fire you?" She responded, "Yes, sir." When asked how another employee had discriminated against her, Acosta replied, "Just being Hispanic. She's Asian." The attorney followed-up with, "[Y]ou think just because of that fact, that's discrimination?" Acosta responded, "Possibly." And when the attorney asked whether she thought that "every white person discriminates against Hispanic people," she again responded, "Possibly."

-3-

Because the judgment does not specify the ground or grounds that the trial court relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *See Viasana v. Ward County*, 296 S.W.3d 652, 653-54 (Tex.App.--El Paso 2009, no pet.). To be entitled to a no-evidence summary judgment, a defendant must specify which elements of the plaintiff's claim lack evidentiary support. *Arellano v. Americanos USA, LLC*, 334 S.W.3d 326, 330 (Tex.App.--El Paso 2010, no pet.). To be entitled to a traditional summary judgment, a defendant must conclusively disprove at least one element of the plaintiff's claim. *Id.* If the defendant meets its initial burden, the burden then shifts to the plaintiff to produce evidence raising a genuine issue of material fact regarding the element at issue. *Id.* On appeal, we view the evidence *de novo* and in the light most favorable to the nonmovant, considering all evidence favorable to her as true and indulging every reasonable inference and resolving any doubts in her favor. *See id.*

The *McDonnell Douglas* burden-shifting rubric governs our analysis of Acosta's discrimination claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973); *Flores v. City of Liberty*, 318 S.W.3d 551, 554 (Tex.App.--Beaumont 2010, no pet.); *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 (Tex.App.--Houston [14th Dist.] 2002, pet. denied); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001)(stating that Texas courts apply analogous federal law when interpreting the TCHRA). Under this rubric, Acosta must first establish a prima facie case of discrimination. *See Quantum Chem.*, 47 S.W.3d at 477. If she establishes a prima facie case, the burden shifts to GECU to articulate a legitimate, nondiscriminatory reason for her termination. *See id.* If GECU meets this burden, the burden shifts back to Acosta to show that the stated reason was a pretext

for discrimination. *See id.*

In its summary judgment motion, GECU argued that Acosta cannot establish a prima facie case of national origin discrimination because there is no evidence that she was treated less favorably than a similarly situated employee of another national origin. GECU argued that Acosta cannot establish a prima facie case of age discrimination because there is no evidence that she was replaced by someone outside the protected class or by someone substantially younger than she is. Even if Acosta could meet her prima facie burdens, GECU asserted that her violation of member confidentiality was a legitimate, non-discriminatory reason for her termination. GECU also asserted that there is no evidence that this reason was pretextual and that "[a]ll the evidence affirmatively shows that [its] articulated reason for its action . . . was true and that there was no actual discrimination . . . ."

### *National Origin Discrimination*

The precise requirements to establish a prima facie case vary depending on the allegations in each particular case. *Quantum Chem.*, 47 S.W.3d at 477. The parties here agree that Acosta was required to establish, among other things, that she was treated less favorably than a similarly situated non-Hispanic employee. *See Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *Flores*, 318 S.W.3d at 554. Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. *Monarrez*, 177 S.W.3d at 917. Moreover, the misconduct of employees who were disciplined must be of comparable seriousness to those who were not disciplined. *Id.* This means that Acosta was required to show that the misconduct for which she was fired was nearly identical to that engaged in by a non-Hispanic employee who was not fired. *See id.* at 918.

-5-

In its summary judgment motion, GECU asserted that there is no evidence to establish that Acosta was treated less favorably than a similarly situated non-Hispanic employee. In response to the summary judgment motion, Acosta submitted an affidavit in which she stated that during the conversation in which she violated the member confidentiality policy, Pam Rivera violated the same policy. According to the affidavit, Rivera said, "Who is Cesar? We got a loan application, ah Ceci?" The affidavit also states that, like Acosta, Rivera was a credit analyst, but unlike Acosta, she is not Hispanic and was not disciplined. GECU did not file a reply to Acosta's summary judgment response, nor did it file an objection to her affidavit. In its appellate brief, GECU does not even acknowledge the existence of the affidavit. In the absence of any attack on Acosta's affidavit, we conclude that it was sufficient to establish her prima facie case. *See Quantum Chem.*, 47 S.W.3d at 477 (noting that a plaintiff's prima facie burden is not onerous).

GECU presented evidence to establish that it had a legitimate, non-discriminatory reason for firing Acosta: Acosta admitted that she violated the member confidentiality policy; that policy specifically provides that a violation will be cause for termination; Acosta was replaced by a Hispanic person; the vast majority of people in her department were Hispanic; and she could not recall any particular discriminatory comments, directed at herself or others, that she heard while employed at GECU. Because this evidence conclusively establishes that GECU's stated reason for firing Acosta was legitimate, non-discriminatory, and non-pretextual, Acosta had the burden to establish a fact issue regarding pretext. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000).

Acosta's brief focuses on her prima facie case. She does not specifically identify any

evidence that demonstrates pretext regarding her national origin claim. Her brief does note, however, that Rivera was not disciplined. Assuming that Acosta believes this evidence creates a fact question on pretext, we disagree.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000); *see also Bowen v. El Paso Electric Co.*, 49 S.W.3d 902, 910 (Tex.App.--El Paso 2001, pet. denied). However, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148, 120 S.Ct. at 2109. Acosta has presented nothing more than a weak prima facie case. She presented no evidence that GECU's stated reason for firing her was false. Her own subjective belief that she was discriminated against is insufficient. *See Herbert v. City of Forest Hill*, 189 S.W.3d 369, 375 (Tex.App.--Fort Worth 2006, no pet.). Thus, the trial court did not err in granting summary judgment as to Acosta's national origin claim.

### *Age Discrimination*

It has been stated that a prima facie case of age discrimination requires proof that the plaintiff (1) was within the protected class of individuals aged forty or older, (2) was discharged, (3) was qualified for the position from which she was discharged, and (4) "was either replaced by someone outside the protected class, replaced by someone younger, or was otherwise discharged

-7-

because of her age." *Russo*, 93 S.W.3d at 435; *see also* TEX.LAB.CODE ANN. § 21.101 (West 2006)(limiting age discrimination claims to individuals who are at least 40 years old). *But see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996)("[T]he fact that [a federal age discrimination] plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case.").

In its motion for summary judgment, GECU argued that Acosta could not satisfy the fourth requirement. Regarding the first method of proving that requirement, GECU pointed out that Acosta's replacement was 47 years old, and was thus within the protected class. Regarding the second method, GECU asserted that although the replacement was younger than Acosta, he was not substantially younger. GECU asserted that the third method of proving the fourth requirement (otherwise discharged because of her age) only applies if the plaintiff was not replaced. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). *But see Mission Consol. Indep. Sch. Dist. v. Garcia*, 314 S.W.3d 548, 556 (Tex.App.--Corpus Christi 2010, pet. granted)("Garcia could establish the fourth element of a prima facie age discrimination claim by showing that she was terminated because of her age, regardless of whether she was replaced by someone younger.").

In her summary judgment response and on appeal, Acosta has not disputed GECU's claim that the third method only applies if the plaintiff was not replaced. She argues instead that this is a "job elimination case" rather than a "replacement case" because there is no evidence that she was going to be replaced before her violation of the member confidentiality policy. Acosta does not cite any authority distinguishing between the two types of cases on this basis, nor does she

offer any reason for making this distinction.

Regardless of which of the three possible methods of proof applies in this case, Acosta has not satisfied any of them.[3]  Within a few weeks of her termination, Acosta was replaced by a person within the protected class who was only four years younger.  The Supreme Court has stated that an inference of discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor*, 517 U.S. at 312-13, 116 S.Ct. at 1310.  A four-year age difference is insignificant. *See Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1028-29 (7th Cir. 1998)(holding that seven-year difference, from 52 to 45 years old, was insufficient to establish fourth requirement of prima facie case); *Hartis v. Mason & Hanger Corp.*, 7 S.W.3d 700, 705 (Tex.App.--Amarillo 1999, no pet.)(holding that three-year difference, from 49 to 46 years old, was insufficient to establish fourth requirement of prima facie case); *see also Grosjean v. First Energy Corp.*, 349 F.3d 332, 338 (6th Cir. 2003)("The overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case.").

Assuming that Acosta could satisfy the fourth requirement with evidence that she was "otherwise discharged because of her age," Acosta has provided no such evidence.  There is absolutely no evidence of any age-related discriminatory conduct or comments at GECU.  Although Acosta points to the affidavits stating that a vice-president violated the member confidentiality policy without being disciplined, the affidavits do not reveal his age.  Similarly, the record does not reveal Rivera's age.  Even if we could conclude that Acosta somehow

---

[3] Because Acosta has not satisfied any of the methods of proof that have been suggested in this case, we find it unnecessary to determine the proper formulation of the fourth requirement of the prima facie case for age discrimination.

established a prima facie case, she faces the same failure of proof in rebutting GECU's claim that she was fired for violating the member confidentiality policy. Because Acosta failed to present any evidence to satisfy the fourth requirement of her prima facie case of age discrimination or any evidence to show that GECU's legitimate, non-discriminatory reason for firing her was pretextual, the trial court did not err in granting summary judgment on this claim.

## CONCLUSION

Acosta's sole issue on appeal is overruled, and the judgment of the trial court is affirmed.


November 2, 2011

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.